# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-260V
Filed:  April 23, 2024

```
*  *  *  *  *  *  *  *  *  *  *  *    *
PATRICIA STEPHENS,                    *
                                      *
            Petitioner,               *
                                      *
v.                                    *
                                      *
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
            Respondent.               *
*  *  *  *  *  *  *  *  *  *  *  *    *
```

*Emily Ashe, Esq.,* Anapol Weiss, Philadelphia, PA, for petitioner.
*Jennifer Shah, Esq.,* U.S. Dept. of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth,** Special Master:

On March 9, 2020, Patricia Stephens ("petitioner" or "Ms. Stephens") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that she suffered from transverse myelitis ("TM") and/or chronic inflammatory demyelinating polyneuropathy ("CIDP") as a result of the influenza ("flu") vaccine she received on October 30, 2017. Petition, ECF No. 1. Petitioner filed an amended petition on January 11, 2023, alleging CIDP as her only injury. Amended Petition, ECF No. 60. Petitioner now seeks an award of interim attorneys' fees and costs.

After careful consideration, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED** for the reasons set forth below.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

# I.    Background

## A. Procedural History

The petition was filed on March 9, 2020, with medical records filed the following day. ECF No. 1, 5. The matter was assigned to Chief Special Master Corcoran and the Special Processing Unit ("SPU"). ECF No. 4. Petitioner filed an affidavit on March 19, 2020. ECF No. 8. Following several motions for extension of time to file outstanding medical records, petitioner filed medical records on November 18, 2020. ECF Nos. 9-12; Petitioner's Exhibit ("Pet. Ex.") 7, ECF No. 14. Additional motions for extensions were filed and granted thereafter. ECF Nos. 15-16.

Emily Ashe substituted as counsel on February 1, 2021. ECF No. 17. Additional medical records were filed on March 15, 2021, May 5, 2021, and May 7, 2021, along with a statement of completion. Pet. Ex. 8, ECF No. 18; Pet. Ex. 9-10, ECF No. 20-22.

The case was reassigned to the undersigned on September 16, 2021, and an initial order was issued that day. ECF Nos. 24-25. By way of status report on December 8, 2021, respondent requested a deadline for his Rule 4(c) Report. ECF No. 27. Petitioner filed additional medical records on December 9, 2021 and December 13, 2021. Pet. Ex. 11-14, ECF Nos. 28-29.

Respondent filed his Rule 4(c) Report on March 25, 2022, recommending against compensation and noting among other issues, medical records that remained outstanding. ECF No. 30. Petitioner then filed additional medical records on April 6, 2022 and April 8, 2022, and a Motion to issue subpoena on April 11, 2022 to secure more records, which was granted. Pet. Ex. 15-18, ECF Nos. 32-33, 35-36.

Because respondent included a request for dismissal at the conclusion of his Rule 4(c) report, petitioner filed a response thereto on April 8, 2022. ECF No. 34. A status conference was held on May 6, 2022 to discuss the language contained in the Rule 4(c) Report prompting petitioner's responsive filing. ECF No. 37. Respondent's counsel clarified that the Rule 4(c) Report utilized a variation of boilerplate language routinely used and was not meant to be treated as a formal motion to dismiss. Petitioner then filed a motion to strike her response, which was granted, on May 11, 2022. ECF Nos. 39-40.

Petitioner filed her vaccination record on May 23, 2022. Pet. Ex. 24, ECF No. 41. Respondent filed a status report on May 25, 2022, advising that he was satisfied with petitioner's proof of vaccination. ECF No. 42.

Additional medical records and motions for extension of time were filed through August 2022. Pet. Ex. 26-30, ECF Nos. 43-53. By way of status report filed on October 13, 2022, respondent advised that he was satisfied that the record was complete, except for records related to petitioner's long-term disability claim. ECF No. 55. In a November 10, 2022 status report, respondent still questioned petitioner's diagnosis, advising that the updated medical records did not establish that she suffered from TM, CIDP, or MS. ECF No. 57.

Petitioner filed a letter from her treating neurologist on December 8, 2022 followed by a status report on December 12 2022 that her neurologist, Dr. Esposito, confirmed her diagnosis as CIDP. Pet. Ex. 31, ECF No. 58; ECF No. 59. Petitioner filed an amended petition alleging CIDP on January 11, 2023. ECF No. 60.

A status conference was held on February 7, 2023. Petitioner advised that she had secured an expert and requested sixty days to file a report. The petitioner's expert report was to address her prior medical history and her diagnosis of CIDP based on clinical presentation and response to IVIG in the absence of corroborating objective testing. ECF No. 61.

On April 10, 2023, petitioner filed a Motion for extension of time to file her expert report, which was granted. ECF No. 63.

On June 9, 2023, petitioner's counsel filed a Motion for Interim Attorneys' Fees and Costs and a Motion to Withdraw as Attorney, stating that "counsel has exhausted all resources to continue her representation of Petitioner and Petitioner intends to continue her case *pro se*." Motion to Withdraw, ECF No. 66. In her Motion for Interim Fees, petitioner's counsel requests a total of $40,350.96, representing $35,487.50 in attorneys' fees and $4,863.46 in costs. Motion for Interim Fees at 4, ECF No. 65. Respondent filed a response on June 23, 2023, recommending that the undersigned exercise her discretion in determining an award of attorneys' fees and costs if she is satisfied that the reasonable basis and interim fees award standards are met. Response at 4, ECF No. 67. Petitioner did not reply or otherwise argue that this matter had a reasonable basis when filed.

This matter is now ripe for determination.

## B. Medical History

Petitioner has a history of migraine, hypertension, anxiety, insomnia, and chronic pain. Pet. Ex. 10 at 16, 22, 24; Pet. Ex. 15 at 7. She also has a documented history of Guillain-Barré Syndrome ("GBS") dating back to 2013. Pet. Ex. 7 at 32, 40, 65, 101, 129, 143.

Petitioner received the subject flu vaccine on October 30, 2017. Petitioner's Exhibit ("Pet. Ex.") 11 at 1. On November 13, 2017, she presented for medical care, reporting falling down the stairs landing on her back two days before with back pain ever since that radiated down her right leg. Pet. Ex. 19 at 76. Petitioner further reported falling off a horse in March and falling off a ladder during the summer but she did not seek medical treatment for either. She complained of numbness and on-and-off tingling on the back of her right leg since before her fall down the stairs. *Id*.

On December 19, 2017, petitioner presented to her neurologist, Dr. Esposito, with complaints of bilateral paresthesia in her fingers, feet, and toes that she described as numbness and tingling without pain. Pet. Ex. 27 at 11. Petitioner reported the onset of paresthesia, which has been constant with fluctuating intensity for the past six weeks, as after her receipt of the flu vaccine. *Id*. Examination was normal, and the record documented paresthesia of "[n]o clear etiology. Began after Flu shot." *Id*. at 13.

Petitioner underwent a nerve conduction study on February 6, 2018, which showed "no evidence of peripheral neuropathy at this time." Pet. Ex. 27 at 18-20. An MRI performed on February 8, 2018 was suggestive of chronic ischemic changes consistent with migraine, but "not highly suggestive of demyelinating disease". *Id*. at 21.

On March 6, 2018, petitioner returned to Dr. Esposito complaining of migraines and paresthesia with two falls in the past week. Physical examination was normal Pet. Ex. 27 at 22-24. She returned again on April 5, 2018, and the assessment was "[p]ossible MS but atypical history and MRI appearance." Dr. Esposito noted the results of a lumbar puncture showing oligoclonal bands and recommended petitioner see an MS specialist. *Id*. at 26-28.

Petitioner presented to Dr. Meador, an MS specialist on April 23, 2018. Pet. Ex. 2 at 1. Petitioner reported chronic migraines that worsened over the past year and a half, progressive difficulty walking over the past year, "several falls with significant injuries", and progressively worsening muscle fatiguability in her arms and legs over the past several months. *Id*. She reported receipt of a flu vaccine in October and noticed an increase in numbness and tingling in her hands and feet around this time that eventually resolved to her baseline of numbness and tingling. *Id*. at 1-2. Dr. Meador's assessment was progressive myelopathy, possible progressive MS, and abnormal spinal fluid with four unique oligoclonal bands. He referred to petitioner's presentation as "somewhat confusing," but noted that the oligoclonal bands in her spinal fluid made progressive MS "highly likely" although her imaging was "completely underwhelming." *Id*. at 4.  Dr. Meador also noted that petitioner benefited from IV steroids that could be used every two to three months to help with her symptoms. He ordered extensive medical testing. *Id*. at 4-5.

Three days later, petitioner returned to Dr. Esposito reporting a fall that morning, not being able to get up, and a loss of consciousness. Pet. Ex. 1 at 21. She continued to have bilateral paresthesia in her fingers, lower limbs, feet, and toes. Dr. Esposito recommended five days of IVIG. He noted that CIDP was still a possibility even though there was no evidence on a nerve conduction study and her CSF protein levels were normal. *Id*. at 23.

On June 1, 2018, petitioner underwent visual and somatosensory evoked potential testing. Pet. Ex. 2 at 15-17. She returned to Dr. Meador on June 11, 2018, to discuss the results of this testing. Pet. Ex. 2 at 18. Dr. Meador reported that the testing confirmed progressive myelopathy, but she did not fulfill the criteria for MS because she does not have two spinal cord lesions or brain lesions typical of MS. He noted that that her abnormal spinal fluid with oligoclonal bands and myelopathy were "most likely related to progressive MS." *Id*. He ordered an MRI of the lumbar and thoracic spine to check for MS-like lesions. *Id*.

Petitioner underwent the MRI and returned to Dr. Meador on August 2, 2018 to discuss the results. Pet. Ex. 2 at 19. The MRI showed T2 lesions "not classic for MS." Her examination continued to fit with myelopathy and her history was typical for progressive MS, but he was not confident that MS was the diagnosis. His assessment was probable progressive MS and a "watch and wait plan" was agreed upon. Dr. Meador was unclear why petitioner was receiving IVIG treatments and wrote that he would consider discontinuing this unless there was a meaningful reason. *Id*.

4

Petitioner presented to Dr. Esposito the next day. The diagnosis section of the record included, "[p]ossible MS but atypical history and MRI appearance. Diagnosed with Progressive MS at UAB. Possible CIDP, Significant improvement on IVIG." Pet. Ex. 1 at 24-26. She returned to Dr. Esposito on November 19, 2018, reporting continued paresthesia, a fall over the weekend, and constant left foot numbness. Dr. Esposito wrote, "context of the paresthesia: occurred after flu vaccine." *Id.* at 30. She reported that IVIG was still helping but not lasting as long. Her IVIG was increased. *Id.* at 30-32.

On December 17, 2018, petitioner returned to Dr. Meador. Pet. Ex. 2 at 23. She reported holding on to things to prevent falls. The numbness in her hands and grip strength were better with IVIG. A recent eye examination was normal with nothing to suggest MS. *Id.* The impression was progressive myelopathy with slight worsening of her lower extremity weakness. She still did not fulfill the criteria for MS. *Id.* at 25-26.

Petitioner returned to Dr. Esposito on January 31, 2019. Pet. Ex. 1 at 33. Her symptoms and diagnoses were unchanged, and she was to continue receiving IVIG every two weeks. *Id.* at 35. Petitioner saw Dr. Esposito periodically throughout 2019 for continued symptoms. *See* Pet. Ex. 27 at 52, 55, 58, 61.

On February 6, 2020, petitioner presented to Dr. Mohammed Shubair, a pulmonologist.[3] Pet. Ex. 10 at 9. The record documented, "CIDP following flu shot." *Id.* at 11. Petitioner continued to see Dr. Esposito periodically over the next several months with her condition unchanged. Pet. Ex. 27 at 67, 70.

Petitioner returned to Dr. Esposito on September 4, 2020 with worsening weakness and numbness and severe pain over the past week causing an inability to work. Pet. Ex. 27 at 73-75. The diagnosis was "[p]ossible MS but atypical history and MRI appearance. Diagnosed with Progressive MS at UAB. Possible CIDP, Significant improvement on IVIG." IVIG was to continue. *Id.* at 75.

Petitioner returned to Dr. Esposito in April and July 2021. Pet. Ex. 27 at 81, 84. At the July 21, 2021, appointment, petitioner's diagnosis included "[p]ossible MS but atypical history and MRI appearance. Diagnosed with Progressive MS at UAB. Still much more probable CIDP given response to IVIG." *Id.* at 86. She followed with Dr. Esposito thereafter in August and October 2021, by which time she had applied for disability and stopped working. *Id.* at 88, 91. She continued to experience symptoms and was under the care of Dr. Esposito throughout 2022. Pet. Ex. 27 at 99, 103, 107. Her diagnoses included paresthesia, CIDP, and severe pain syndrome. *Id.* at 101, 105, 109. On June 3, 2022, she reported worsening symptoms and an inability to pay the copays for IVIG. *Id.* at 107.

In a letter dated December 7, 2022, Dr. Esposito wrote that he has been treating her since 2017, "after experiencing neurological symptoms that began after taking flu vaccine." Pet. Ex. 31. He "diagnosed her with CIDP despite her spinal fluid and electrodiagnostic studies not showing

---

[3] Dr. Shubair's record from this date also listed the flu vaccine as an allergy. Pet. Ex. 10 at 9. However, Dr. Shubair later wrote a letter clarifying that petitioner was listed as having a flu vaccine allergy due to her fear of the flu vaccine, and it was removed from her allergy "after numerous educational sessions." Pet. Ex. 13.

typical changes based on clinical features and excellent response to IVIG which has controlled many of her symptoms." *Id.* After the filing of this letter, petitioner filed a status report advising that she intended to proceed with a diagnosis of CIDP and filed an amended petition accordingly. ECF Nos. 59-60.

## II.   Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis. In the instant case, the undersigned has no reason to believe, and respondent does not argue, that petitioner did not bring her claim in good faith. Therefore, the undersigned finds that petitioner brought her claim in good faith.

### A. Reasonable Basis

#### 1. Legal Standard

In discussing the reasonable basis requirement, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the petitioner:

> (1) received a vaccine listed on the Vaccine Injury Table;
> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis focuses on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient

objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018).

Reasonable basis is satisfied when there is more than a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham*, 971 F.3d at 1346; *see Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *see Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a "scintilla" looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "'evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation.'" *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). Additionally, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius on Behalf of E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021).

Evaluation of reasonable basis is limited to the objective evidence submitted. *Simmons*, 875 F.3d at 636. Still, a special master is not precluded from considering objective factors such as "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa. See Cottingham*, 971 F.3d at 1344. The Federal Circuit reiterated that counsel's conduct is subjective evidence not to be considered when evaluating reasonable basis. *Id.* at 1345. Counsel's attempt or desire to obtain additional records before filing is subjective evidence and does not negate the objective sufficiency of evidence presented in support of a claim. *James-Cornelius*, 984 F.3d at 1381. The Federal Circuit has additionally articulated that special masters cannot broadly categorize all petitioner affidavits as subjective evidence or altogether refuse to consider petitioner's sworn statements in evaluating reasonable basis. *Id.* at 1380 (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation). However, a petitioner's own statements alone cannot support reasonable basis, and special masters may make factual determinations as to the weight of evidence. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham*, 971 F.3d at 1347.

While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs.*, No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury

in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs*., 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

Though a special master has broad discretion, a special master must keep in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance, and a special master may not abuse their discretion in denying reasonable basis and fees. *See James-Cornelius*, 984 F.3d at 1381.

## 2.  Analysis of Reasonable Basis

To establish a reasonable basis for attorneys' fees, the burden is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham*, 971 F.3d 1345-46. Petitioner must provide more than a mere scintilla of evidence, defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham*, 154 Fed. Cl. 795 (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

Respondent did not substantively address reasonable basis in this matter, but rather deferred to the undersigned to determine whether the reasonable basis standard was met, and petitioner did not file a reply or otherwise argue in support of a finding of reasonable basis. *See* Response, ECF No. 67.

Prior to the filing of the petition, petitioner was diagnosed with progressive myelopathy by Dr. Meador and "possible CIDP" by Dr. Esposito. Pet. Ex. 2 at 19, 25; Pet. Ex. 1 at 23, 24-26. She received IVIG treatments since April 26, 2018, with improving symptoms. *See* Pet. Ex. 1 at 26, 26, 30, 32, 35; Pet. Ex. 27 at 57, 60, 63, 66.

By January 2020, two months before the petition was filed, Dr. Esposito's records referred to petitioner's diagnosis as "probable" CIDP rather than "possible" CIDP and he continued to treat her with IVIG every two weeks. Pet. Ex. 27 at 66, 69, 72, 75, 79, 83. In July 2021, after extensive testing, Dr. Esposito wrote, "[s]till much more probable CIDP given response to IVIG." Pet. Ex. 27 at 86. The last record filed from Dr. Esposito on June 3, 2022 stated that petitioner's symptoms were worse recently due to her inability to her inability to pay the copays for IVIG, and her diagnoses were paresthesia, CIDP, and severe pain syndrome. *Id*. at 107-09.

The medical records also contain several references which correlate the onset of her symptoms and CIDP diagnosis with the flu vaccine. When petitioner initially presented to Dr. Esposito on December 19, 2017, he wrote, "[t]he context of the paresthesia: occurred after flu vaccine." This then appears throughout Dr. Esposito's records in the History of Present Illness section. Pet. Ex. 1 at 8. When petitioner presented to her pulmonologist Dr. Shubair on February 6, 2020, he wrote, "CIDP following flu shot." Pet. Ex. 10 at 11.

In addition to the medical records, when petitioner amended her petition to allege only CIDP as a result of the subject flu vaccine, she filed a letter from Dr. Esposito confirming that he has diagnosed her with CIDP "despite her spinal fluid and electrodiagnostic studies not showing typical changes based on clinical features and excellent response to IVIG which has controlled many of her symptoms." Pet. Ex. 31.

A determination of reasonable basis requires more than a mere scintilla of evidence, a lesser standard than that required for a determination of entitlement. The contemporaneous medical records document that petitioner has been diagnosed with and treated for CIDP from the time prior to the filing of the petition and in the time since. Based on the medical records and the letter submitted by her treating neurologist, I find petitioner has provided sufficient evidence for purposes of satisfying the reasonable basis requirements. However, the burden for proving reasonable basis is much lower than the preponderance of evidence standard required to prove causation, and demonstrating reasonable basis does not mean that petitioner has sufficiently proven causation. *See James-Cornelius*, 984 F.3d at 1379-80; *Braun v. Sec'y of Health & Human Servs.*, 144 Fed. Cl. 72, 78 (2019). As discussed during the most recent conference in this matter, as petitioner continues to pursue her claim, an expert will be required and must address petitioner's CIDP diagnosis based on clinical presentation and response to IVIG in the absence of corroborating objective testing. *See* ECF No. 61.

Accordingly, I find that the matter was filed and maintained to the present with a reasonable basis.

### III.    Reasonable Interim Attorney's Fees

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera*, 515 F. 3d at 1352. The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id.* at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016). In addition, interim fees may be awarded when petitioner's counsel withdraws from a case. *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. at 154. However, "the mere fact that an attorney plans to withdraw is not necessarily a hardship that triggers an award of interim attorneys' fees and costs." *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. at 297, 300 (2011).

Under the circumstances of this case, interim fees are warranted. This matter has been pending for more than four years, which ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g.*,

*Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship in petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees).

Petitioner's counsel has expended significant time and costs in litigating this matter and has now moved to withdraw because she "has exhausted all resources to continue her representation of Petitioner." Motion to Withdraw at 2, ECF No. 66. Special masters have underscored the importance of awarding attorneys' fees to encourage the participation of competent legal counsel in the Vaccine Program. As the Special Master stated in *Iannuzzi v. Sec'y of Health & Human Servs.*:

> Simply put, the ultimate purpose of Vaccine Act fees and costs awards is not to benefit the attorneys involved, but to ensure that Vaccine Act petitioners will have adequate access to competent counsel . . . Accordingly, when attorneys spend a reasonable amount of time and costs in representing Vaccine Act petitioners, such attorneys must be fairly compensated for their expenditures, in order to encourage attorneys to participate in future Vaccine Act cases.

No. 02-780V, 2007 WL 1032379, at *11 (Fed. Cl. Spec. Mstr. Mar. 20, 2007), *rev'd in part*, 78 Fed. Cl. 1 (2007) (emphasis in original); *see also James-Cornelius*, 984 F.3d at 1381 (in exercising her discretion to award attorneys' fees, the special master must keep in mind the remedial objective of maintaining petitioners' access to willing and qualified legal assistance). Petitioner intends to continue her case *pro se* and it will be some time until this matter is concluded. Thus, under these circumstances, an award of interim fees is appropriate.

## 1.  Reasonable Hourly Rates

A reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). Rather than being based on the prevailing rate in the forum where petitioner's attorney practices, the rate is based on the forum rate for the District of Columbia. *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). A narrow exception to this forum rule applies "where the bulk of the attorney's work is done outside the forum jurisdiction, and where there is a very significant difference in the compensation rate between the place where the work was done and the forum." *Id.* This exception is known as the *Davis County* exception, and it provides for attorneys' fees to be awarded at local hourly rates. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

*McCulloch* provides a multifactor framework for deciding the reasonable forum rate based on the attorney's experience, overall quality of work performed, and prevailing rates in the program and forum. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL

5634323, at *17 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioner requests the following rates for the work of her current counsel, Ms. Emily Ashe, and her colleagues:

|  | **2019** | **2020** | **2021** | **2022** | **2023** |
|---|---|---|---|---|---|
| **Emily Ashe** | $290 | $310 | $330 | $350 | $370 |
| **Miriam Barish** | - | - | - | $380 | $400 |
| **Gregory Spizer** | $380 | $400 | - | - | - |

Motion for Interim Fees at 2-3. The requested hourly rates are consistent with what Ms. Ashe and her colleagues have previously been awarded. *See Gorham v. Sec'y of Health & Human Servs.*, No. 20-083V, 2023 WL 6465146 (Fed. Cl. Spec. Mstr. Aug. 30, 2023). Accordingly, I find the hourly rates reasonable and award them as requested herein.

## 2. Hours Reasonably Expended

Attorneys' fees may be awarded for the number of hours reasonably expended during litigation. *Avera*, 515 F.3d at 1348. The special master should use her prior experience and judgement to exclude from the fee calculation hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Unreasonably duplicative or excessive billing can include attorneys billing at attorney rates for clerical work, "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intraoffice communications, attorneys billing excessive hours, attorneys entering erroneous billing entries, [and] attorneys billing excessively for interoffice communications." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702-703 (2016). Secretarial and clerical tasks such as reviewing invoices and scheduling meetings are not compensable under the Vaccine Program. *See McCulloch*, 2015 WL 5634323, at *26; *Raymo,* 129 Fed. Cl. at 702. Billing for learning about the basic aspects of the Vaccine Program is also not compensable. *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016).

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Further, attorneys may be compensated for hours traveled at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases); *see also Knox v. Sec'y of Health & Human Servs.*, No. 90–33V, 1991 WL 33242, at *7 (Fed. Cl. Spec. Mstr. Feb. 22, 1991) (finding that "50% of the expert's [travel] time should be compensated"). Ultimately, the special master maintains discretion in awarding fees for reasonable hours expended and "is permitted to reduce attorneys' hours found to be

---

[4] The 2015-2024 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.*, No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

excessive by a percentage." *Raymo,* 129 Fed. Cl. at 702; *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the submitted billing records, the timesheet entries are sufficiently detailed for an assessment of reasonableness, and I find the time billed to be reasonable. Accordingly, petitioner is awarded attorneys' fees in the amount of **$35,487.50.**

**3. Reasonable Costs**

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of **$4,863.46** in costs for the acquisition of medical records and filing and postage costs. Motion for Interim Fees at 4, Ex. B. I find these costs reasonable and supported with adequate documentation. Therefore, petitioner is entitled to **$4,863.46**, the full amount of costs sought.

## IV.    Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED.** Petitioner is hereby awarded **a lump sum of $40,350.96,** representing in $35,487.50 in attorneys' fees and $4,863.46 in costs, **in the form of a check payable jointly to petitioner and petitioner's counsel, Emily Ashe, Esq.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.